[No. B030071. Second Dist., Div. Four. Mar. 10, 1988.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
ARTHUR R., a Minor, Real Party in Interest.

**COUNSEL**

Ira Reiner, District Attorney, Donald J. Kaplan and Daniel L. Bershin, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Wilbur F. Littlefield, Public Defender, Alan Simon, Theodore Fasteau and Sue Robin Pollock, Deputy Public Defenders, for Real Party in Interest.

**OPINION**

**WOODS, P. J.**—By petition for writ of mandate, the People seek review of a juvenile court order terminating dispositional jurisdiction over a minor.

The material facts are simple and not disputed.

The challenged July 1987 order terminated the juvenile court's dispositional jurisdiction over the ward under a Welfare and Institutions Code section 602[1] petition (possession of cocaine) sustained in 1986. Termination was granted on the minor's motion after the People had filed a new section 602 petition in February 1987, alleging a 1987 forcible rape and obtained a section 707, subdivision (b) determination of "unfitness"[2] thereon. Thereafter, for undisclosed reasons, the People declined to prosecute the minor as

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] The criterion for such a finding is stated in section 707, subdivision (a): ". . . the juvenile court may find the minor is not a fit and proper subject to be dealt with under the juvenile court law if it concludes that the minor would not be amenable to the care, treatment, and training program available through the facilities of the juvenile court, based upon an evaluation of the following criteria: . . . ."

an adult. The minor was between 16 and 18 years of age when he committed the offenses alleged in the petitions.

The petition presents two principal issues. First, a procedural question of first impression, whether the People may seek extraordinary writ review of a postjudgment juvenile court order terminating jurisdiction over a section 602 ward. Second, the substantive question whether the juvenile court abused its discretion in the circumstances described.

Because we determine that the People have no entitlement to review either by appeal or extraordinary writ, we will not reach the substantive issue presented.

## I

### Entitlement of the People to Review by Extraordinary Writ

The minor contends in his return to the alternative writ that the People are not entitled to review of the postjudgment order by extraordinary writ. To resolve this procedural issue, we must first determine whether a statutory right of appeal exists. If it does, then a derivative entitlement to seek writ review would exist. If there is no statutory right of appeal, then we must determine whether the People are nevertheless entitled to petition for an extraordinary writ under independent case law authority.

### A.

### Right to Appeal

The People's right to appeal in criminal actions and juvenile court proceedings is conferred exclusively by statute. (*People* v. *Smith* (1983) 33 Cal.3d 596, 600 [189 Cal.Rptr. 862, 659 P.2d 1152]; *In re Richard C.* (1979) 89 Cal.App.3d 477, 482 [152 Cal.Rptr. 787].) Entitlement to appeal from judgments and postjudgment orders in juvenile court proceedings initiated under section 602 is governed exclusively by section 800.

As will be demonstrated, the provisions of section 800, viewed in light of its legislative history, do not authorize appeals by the People from section 602 judgments or orders entered after such judgments.

Since amended effective 1980, section 800 has provided, in pertinent part: "A judgment in a proceeding under Section 601 or 602 . . . may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment. . . .

"A ruling on a motion to suppress pursuant to Section 700.1 shall be reviewed on appeal even if the judgment is predicated upon an admission of the allegations of the petition or even if the judgment is a dismissal of the petition or any count or counts thereof; however, no appeal by the people shall lie as to any count which, if the people are successful, will be the basis for further proceedings subjecting any person to double jeopardy in violation of the State or Federal Constitution."

The minor herein contends that the absence in section 800 of an express reference to the People as a party entitled to appeal from section 602 judgments, together with pertinent legislative history, demonstrates that the statute must be construed as not giving the People a right of appeal. This construction is consistent with the general fundamental principle that the prosecution may not appeal from judgments of acquittal. (*United States* v. *Wilson* (1975) 420 U.S. 332, 352-353 [43 L.Ed.2d 232, 95 S.Ct. 1013].)[3] The People contend that the broad language of section 800 with regard to appealable judgments, particularly when compared to the language of the statute prior to its 1980 amendment, requires the construction that the 1980 amendment was intended to permit People's appeals from all section 602 judgments (implicitly including dismissals of section 602 petitions for failure of the People to prove that the minor committed the alleged offense) and from all postjudgment orders.

■ ■■■ Accordingly, it is necessary for this court to apply rules of statutory construction to resolve a discrepancy between the language of the statute and the intent manifested by its legislative history. (*Silver* v. *Brown* (1966) 63 Cal.2d 841, 845-846 [48 Cal.Rptr. 609, 409 P.2d 689].)[4]

■ The primary rule of statutory construction is that the courts should attempt to ascertain the intent of the Legislature and construe a statute so as to effectuate its purpose. All other rules of construction are subordinate to this primary principle. (*Tripp* v. *Swoap* (1976) 17 Cal.3d 671, 679 [131 Cal.Rptr. 789, 552 P.2d 749]; *Estate of Banerjee* (1978) 21 Cal.3d 527, 539 [147 Cal.Rptr. 157, 580 P.2d 657].)

---

[3] Although juvenile proceedings are not criminal (§ 203) and not controlled in all respects by statutes and rules applicable to criminal proceedings and appeals, a general parallel has been acknowledged. (See *People* v. *Superior Court (James B.)* (1981) 122 Cal.App.3d 263, 268 [175 Cal.Rptr. 733].)

[4] The appropriateness of this process is stated in *County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 849 [59 Cal.Rptr. 609, 428 P.2d 593], at footnote 6 as follows: "We disagree, however, . . . that in all cases 'ambiguity is a condition precedent to interpretation.' Although this proposition is generally true, 'the literal meaning of the words of a statute may be disregarded to avoid absurd results or to give effect to manifest purposes that, in the light of the statute's legislative history, appear from its provisions considered as a whole.' " (Quoting *Silver* v. *Brown, supra,* 63 Cal.2d at pp. 845-846.)

Legislative committee reports and other legislative records are appropriate sources from which legislative intent may be ascertained. *(Silver* v. *Brown, supra,* 63 Cal.2d at p. 846; *Beltone Electronics Corp.* v. *Superior Court* (1978) 87 Cal.App.3d 452, 455-457 [151 Cal.Rptr. 109].)

Prior to its amendment in 1980, section 800 provided that "A judgment or decree of a juvenile court or final order of a referee which becomes effective without approval of a judge of the juvenile court *assuming jurisdiction and declaring any person to be a person described in Section 601 or 602* . . . may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment . . . ." (Italics added.)

In this form, section 800 was construed by cases as conferring to minors the *exclusive* right to appeal from judgments in section 601 and 602 proceedings because the language limited appeals to judgments sustaining petitions.[5] *(In re Richard C., supra,* 89 Cal.App.3d 477, 482-483; *People* v. *Superior Court (John D.)* (1979) 95 Cal.App.3d 380, 385-386 [157 Cal.Rptr. 157].) California Rules of Court, rule 1396, similarly construes former section 800 to have provided that the minor may appeal from any section 602 judgment and the parents may appeal from any such judgment that removes the minor from their home. Rule 1396 makes no reference to any right of appeal by the People.

The 1980 amendment deleted the language from the first paragraph of section 800 that expressly limited appeals to judgments sustaining section 601 and 602 petitions. It added a new second paragraph that confers to the People a previously nonexistent right to appeal from prejudgment orders suppressing evidence. Such appeals were expressly made subject to double jeopardy protection.[6]

With the facial changes effected by the 1980 amendment in mind, we look to pertinent records of the 1979 legislative session to discern the intent of the changes.

Senate Committee Reports and staff bill reports prepared during the 1979 regular legislative session reveal the summaries and analysis given to the legislators informing them of the existing case law construction of section 800 and of the respects in which Senate Bill No. 379 proposed to amend the

---

[5] This restriction against People's appeals was unqualified even though the People might often have desired to appeal from the dispositional aspect of a wardship judgment or from the juvenile court's election pursuant to section 725, subdivision (a) to grant probation on the sustained section 602 petition and not declare the minor a ward.

[6] Statutes 1980, chapter 1095, pages 3511-3512, codified January 1, 1980, as section 700.1.

effect of section 800. These reports and bill summaries unequivocally manifest the legislative intent not to amend section 800 so as to permit People's appeals from section 602 judgments or postjudgment orders.

Senate Conference Committee Report No. 015100 (Sen. Bill No. 379 (Presley) as amended Aug. 29, 1979, and adopted by the Assembly Sept. 4, 1979) states: *"Under current juvenile court law,* a minor has the exclusive right to appeal. Case law holds that the prosecutor has no right to appeal but does have the right to seek appellate review through filing an extraordinary writ in any case in which the judge has misapplied the law. This latter provision is subject to the double jeopardy protection of the minor." (Italics in original.) With regard to appellate review, the report summarizes the *"effect* of Senate Bill 379, *as passed by the Senate, "* exclusively as giving the "district attorney" the right to appeal from "decisions which permit suppression of evidence."[7] (Italics added.)

Nothing in Report No. 015100 suggests any intent or any contemplation that Senate Bill No. 379 would alter existing law denying the People a right to appeal from section 602 judgments or postjudgment orders. The report unequivocally reflects that the sole contemplated effect of the amendment concerning People's appeal rights was to create a right to appeal from pre-adjudication orders granting suppression motions. (See *In re Joseph B.* (1983) 34 Cal.3d 952, 957 [196 Cal.Rptr. 348, 671 P.2d 852].) Reasonable minds would expect that such a proposed radical expansion of the People's right to appeal section 602 judgments—from no right at all to an unrestricted right exceeding in scope that conferred by statute in criminal cases— would certainly have been reflected in these legislative documents.

■■■ The clear legislative intent manifested by the legislative history of section 800 compels the conclusion that the change in language regarding

---

[7] Additional legislative history of Senate Bill No. 379 (Presley) corroborates this conclusion.

The Assembly Committee on Criminal Justice "Bill Analysis: Senate Bill 379 (as amended May 25, 1979)" describes the bill in language identical to that quoted from Report No. 015100, *supra.* It adds a citation to *In re Richard C., supra,* 89 Cal.App.3d 477, as controlling case law construing section 800 to restrict appeals to juveniles but recognizing a People's qualified entitlement to writ review if double jeopardy is not threatened.

The Assembly Office of Research Digest of the third reading of Senate Bill No. 379 (dated Aug. 31, 1979) states a description of the bill identical to that in Report No. 015100. It states that the proposed amendment gives both the minor and the People the right to appeal "Decisions which suppress evidence. . . ."

Also, a September 11, 1980 letter from the author of Senate Bill No. 379, Senator Robert Presley, to then Governor Edmund G. Brown, Jr., urging the Governor to sign the bill, states the sole substantive modification of appeal rights to be in the area of suppression motions. The "Enrolled Bill Report" for Senate Bill No. 379 submitted by the Youth and Adult Correctional Agency of the California Youth Authority, dated September 8, 1980, contains a substantively identical description of the bill.

appeals from section 602 judgments was a stylistic revision not intended to create broad new appeal rights in the People. Accordingly, we construe the first paragraph of present section 800 as not authorizing People's appeals from section 602 judgments.

For the same reason, we reject the People's principal argument that irrespective of the appealability of section 602 judgments, section 800 permits the People to appeal from "any subsequent orders."

Despite the difference in nature and subject matter of section 602 judgments as opposed to orders entered after such judgments (theoretically analogous to criminal judgments of conviction and postjudgment orders specified as appealable by Pen. Code, § 1238.5), the legislative history just discussed reflects that the Legislature understood and intended that the People have no right to appeal from either a section 602 judgment or from "any subsequent order." It is reasonable to infer an intent that the People's right to appellate review of section 602 judgments and postjudgment orders remains limited to review by extraordinary writ.[8]

### B.

We now briefly explain why the People are not entitled to seek extraordinary writ review in this instance under independent case law authority permitting qualified writ review in the absence of a foundational statutory right to appeal.

---

[8] We also reject the People's argument that the limiting "double jeopardy" proviso in the second paragraph of section 800 cannot apply to People's appeals from preadjudication orders granting suppression motions and, thus, must have been intended to qualify a general right to appeal from judgments given the People in the first paragraph.

The People reason that "This limitation [double jeopardy] has no application to the additionally created right of the People to review of a motion [*sic*: order] to suppress pursuant to section 700.1. . . . (fn.) as that motion must be heard prior to the attachment of jeopardy."

But it is incorrect to conclude that a successful People's appeal from a prejudgment suppression order could never pose a double jeopardy threat because suppression motions are required by statute to be determined prior to the jurisdictional hearing. For example, despite a suppression order the People could elect to proceed to a jurisdictional adjudication on the charges. A dismissal of the section 602 petition could result for lack of evidence that the minor committed the offense. The People could nevertheless subsequently prevail on their appeal from the suppression order and seek a readjudication of the jurisdictional issue on the additional admissible evidence. (See §§ 700.1, 701, 602, and 800, second par.)

Finally, we also reject the creative argument that because California Rules of Court, rule 1396 summarizes the language of section 800 as including a conditional right of appeal in custodial parents, it follows that the People, as *parens patriae* of minors in juvenile court proceedings, have an analogous right to appeal to "promote" the best interests of the minor. The legislative history reflects the Legislature's understanding that "the People" have no right of appeal from section 602 judgments, irrespective of the capacity in which the prosecutor purports to act.

■ The test controlling the People's entitlement to review by writ is derived from *People* v. *Superior Court* (*Howard*) (1968) 69 Cal.2d 491, 501 [72 Cal.Rptr. 330, 446 P.2d 138]. The test employs two criteria. First, the challenged trial court order must be an act "in excess of jurisdiction." Second, upon a careful balancing, the need to correct judicial errors prejudicing the People must outweigh the conflicting threat of harassment to the accused. The second criterion must be resolved against writ review whenever granting the writ would threaten defendant with double jeopardy.

Two lines of cases interpreting *Howard, supra,* have developed a clear split in authority as to the meaning of "excess of jurisdiction."[9]

The first line of post-*Howard* cases (the minority) views *Howard* as using the term "excess of jurisdiction" in the "traditional sense" of acting without jurisdiction of the subject matter or of the person in the action. These cases broaden the "traditional sense" somewhat by permitting jurisdiction of the court over the action but focusing on the court's jurisdiction to entertain the type of motion on which the challenged order issues. (*People* v. *Superior Court* (*Edmonds*) (1971) 4 Cal.3d 605, 608 [94 Cal.Rptr. 250, 483 P.2d 1202]; *People* v. *Municipal Court* (*Kong*) (1981) 122 Cal.App.3d 176, 182-183 [175 Cal.Rptr. 861].)

The second line of cases views *Howard, supra,* as intending the "broader" sense of "lack of jurisdiction," adopted in *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 291 [109 P.2d 942, 132 A.L.R. 715], with regard to writ petitions in noncriminal cases. These cases view any misinterpretation, misapplication or refusal to follow applicable constitutional, statutory or case law authority as an act in excess of judicial jurisdiction. (*People* ex rel. *Kottmeier* v. *Superior Court* (1987) 194 Cal.App.3d 1536, 1540 [239 Cal.Rptr. 920]; *People* v. *Superior Court* (*Himmelsbach*) (1986) 186 Cal.App.3d 524, 530-533 [230 Cal.Rptr. 890]; *In re Richard C.* (1979) 89 Cal.App.3d 477, 484 [152 Cal.Rptr. 787].)

---

[9] This split is understandable in view of the style in which the *Howard* court treats the issue. It first acknowledges two divergent lines of cases employing the two different senses of "excess of jurisdiction." It comments that the more liberal sense of the term would permit the People writ review in most cases where the Legislature has denied them review by appeal, but then immediately adds, as a safeguard, the second criterion of balancing the resulting prejudice to the defendant. The structure of this reasoning is equivocal. It does not clearly indicate a renunciation of the more liberal sense of "excess of jurisdiction" nor does it indisputably determine that the evils of the more liberal sense of "excess of jurisdiction" are cured by addition of the second criterion. Other statements in *Howard* may be construed to suggest adoption of either sense of "excess of jurisdiction." However, on balance, it might be that *Howard* intended to avoid settling the split in authority and stands only for its narrow holding that whenever double jeopardy is threatened, the People may not obtain review by extraordinary writ.

■ Although we acknowledge the split in authority, we need not resolve the conflict because under either line of cases the challenged juvenile court order is not an act "in excess of jurisdiction" subject to writ review.[10]

The People's contention in this mandate proceeding is, simply put, that *In re Dennis J.* (1977) 72 Cal.App.3d 755 [140 Cal.Rptr. 463], is incorrectly decided and should be disapproved on its facts because it holds that the juvenile court must terminate jurisdiction as to all previously sustained section 602 petitions against a minor (who was at least 16 years of age when committing the offenses) whenever that court determines on a subsequent petition that the minor is unfit under section 707, subdivision (b) for juvenile court treatment.

There is no claim in the petition that the challenged order is "an act in excess of jurisdiction" in any pertinent sense. We will briefly discuss the facts and holding of *Dennis J.* solely to demonstrate that we may not reach the merits of the substantive issue.

In *In re Dennis J., supra,* 72 Cal.App.3d 755, two section 602 petitions were sustained as to a 17-year-old juvenile. He was awaiting dispositional orders on the sustained petitions when a third petition was filed alleging his commission of serious, violent felonies. The People obtained a determination of unfitness for further juvenile court jurisdiction under section 707, subdivision (b) on the basis of all his section 602 offenses. The minor was criminally prosecuted on the new alleged offenses. He entered a guilty plea and was sentenced to one year in jail as a condition of three years' probation. The juvenile court then purported to enter dispositional orders on the two previously sustained petitions, placing the minor in California Youth Authority. The juvenile court's dispositional order was viewed as motivated by a perception that the criminal court was too lenient on the minor.

On the minor's appeal from the dispositional orders, the *Dennis J.* court held that the juvenile court may not attempt to exercise continued jurisdiction over the minor as to any juvenile petitions "pending" as of the time the juvenile is determined to be "unfit" under section 707. (*Id.,* at pp. 761-762.)

The court states two rationales for this holding. First, logically, a determination that the minor is unfit for further efforts at treatment or rehabilita-

---

[10] It is necessary for courts to observe this limitation. "The restriction on the People's right to appeal is not merely a procedural limitation allocating appellate review between direct appeals and extraordinary writs but is a substantive limitation on review of trial court determinations in criminal trials." (*People* v. *Superior Court (Howard )*, *supra,* 69 Cal.2d at p. 498.) "To permit the People to resort to an extraordinary writ to review where there is no right to appeal would be to give the People the very appeal which the Legislature has denied them." (*Id.,* at p. 499.)

tion under placement alternatives available to the juvenile court necessarily regards the minor as a single personality not susceptible to conflicting fitness determinations *on the same evidence*. Second, pragmatically, the retention of juvenile court jurisdiction as to previously sustained section 602 petitions creates risks of conflict inherent in dual jurisdiction over the minor by the juvenile court, seeking to treat and rehabilitate the minor, and by the criminal court, seeking to impose punishment. (*Id.,* at pp. 760-762.)

Here, the People have declined to prosecute the juvenile as an adult, but have offered no evidence or explanation to negate the earlier finding of "unfitness."

No act by the trial court in excess of jurisdiction having been shown, the alternative writ is discharged and the peremptory writ is denied.

McClosky, J., and George, J., concurred.